IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


ADAMS MFG. CORP., a Pennsylvania )
Corporation, )
                          Plaintiff, )
                                  )     Civil Action No. 12-1430
      vs. )
                                    )     Magistrate Judge Maureen P. Kelly
                                    )
The Honorable TERESA STANEK REA, )
in her official capacity as Acting Director of )     Re: ECF Nos. 24, 27
the United States Patent and Trademark )
Office, )
                          Defendant. )


## OPINION

**KELLY, Magistrate Judge**


       This action commenced on April 28, 2010, when Plaintiff Adams Mfg. Corp, ("Adams"),

filed an application, No. 85/025,503, in the United States Patent and Trademark Office

("USPTO") to register a suction cup with a concentric two-ring design as a trademark.[1]  The

proposed mark is as follows:

---

[1] As set forth in the Trademark Application: "The mark consists of a three-dimensional configuration of a suction cup with two concentric rigns [sic] on the outer surface of the cup poriton [sic] of the suction cup. The broken lines depicting the stem and outer edge of the suction cup indictate [sic] placement of the mark on the goods and are not part of the mark. Color is not claimed as a feature of the mark."   In Re Adams Mfg. Corp., 85025503, 2012 WL 3561625 (Trademark Tr. & App. Bd. Aug. 7, 2012).



The reviewing USPTO Examining Attorney ("Examining Attorney") refused Adams'

application for registration, finding the design ineligible because it is functional.  Alternatively,

the Examining Attorney determined the design was not inherently distinctive, and had not

acquired distinctiveness as the mark of an Adams' product within the meaning of 15 U.S.C.

§ 1502. [2]   Adams filed an appeal to the Trademark Trial and Appeal Board ("TTAB"), the

administrative tribunal within the USPTO charged with resolving appeals of final refusals.  The

TTAB affirmed the refusal to register Adams' mark. Adams now seeks judicial review of the

TTAB decision pursuant to 15 U.S.C. § 1071(b)(1).  The Honorable Teresa Stanek Rea has been

named as a defendant in her capacity as the Acting Director of the USPTO.

Presently before the Court are the parties' cross-motions for summary judgment.  For the

reasons that follow, upon consideration of the parties' motions, briefs in support and opposition

---

[2] The Lanham Act, 15 U.S.C.A. § 1502 provides, in pertinent part,

> **No trademark** by which the goods of the applicant may be distinguished from the goods of others **shall be refused registration** on the principal register on account of its nature **unless it—**
>
> (e) Consists of a mark which … (1) when used on or in connection with the goods of the applicant is merely descriptive or deceptively misdescriptive of them, …. (5) **comprises any matter that, as a whole, is functional**.
>
>  (f) Except as expressly excluded in subsections (a), (b), (c), (d), (e)(3), and (e)(5) of this section, **nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce**. The Director may accept as prima facie evidence that the mark has become distinctive, as used on or in connection with the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made.

15 U.S.C.A. § 1052 (West) (emphasis and italics added).

thereto, as well as the voluminous exhibits submitted to both the TTAB and to this Court, the Motion for Summary Judgment filed by Adams [ECF No. 24] is denied and the Motion for Summary Judgment filed by the USTPO [ECF No. 27] is granted.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Adams is a Pennsylvania corporation that manufactures and markets clear vinyl suction cups. Beginning August 13, 1991, Adams held a utility patent, US Patent No. 5039045 (filed May 29, 1990) (the "'045 Patent") for a clear suction cup with at least one circular ridge along the outer portion of the cup. The "background of the invention," provided with the patent, explains that, "[w]hen attached to the back window of an automobile, the suction cup can under certain circumstances, act like a magnifying glass by converging the sun's rays at a single focal point. When this focal point falls on the fabric or back panel of an automobile, the converged sun's rays will heat up and possibly mar the surface of the fabric. If the right conditions occur, it is possible that the focused rays of the sun might damage the fabric or back panel of the automobile." U.S. Patent No. 5,039,045.

Adams patent claimed the improvement to the suction cup as a "plurality of surface deformations … such that light rays passing through said suction cup will not converge at a single point." "[S]aid surface deformations are circular ridges provided in" the exterior surface of the suction cup. Id., Claims at 4, 6. "In such an arrangement, light passing through the ridge[s] continues in a straight path and does not converge at a focal point." Id., Abstract. The creation of circular ridges, as opposed to other alternative methods of diffusing light, is touted as reducing required materials and manufacturing time. Id., Description of the Preferred Embodiments. Adams' utility patent was granted on August 13, 1991, and until expiration, Adams was afforded a production monopoly for the concentric ring suction cup design. 35 U.S.C. §§ 154, 173.

Over the years of production and sale of the suction cup, Adams actively promoted the utilitarian functional purpose of its design, using the following graphic on most packaging and advertising:



ECF No. 8-5, p.4; and see, ECF No. 8-2, p. 5.

Nearing the expiration of its utility patent, Adams sought registration of the design as a trademark. As discerned by the Examining Attorney and the TTAB, trademark registration for the two ring design would extend Adams' production monopoly over the concentric ring design into perpetuity. See, e.g., Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 165 (1995). Driving this litigation, therefore, is the fundamental tension between the protection of the public's right to use and copy a patented feature upon expiration of a utility patent, and Adams' desire to maintain its production monopoly through the registration of the design as a trademark.

On August 18, 2010, the Examining Attorney refused registration under 15 U.S.C. § 1052(e)(1) and (e)(5) on the basis that the design is functional and, alternatively, that even if not functional, the suction cup design is a non-distinctive configuration of goods under 15 U.S.C. § 1051-1052 and 1127. The Examining Attorney also determined that Adams failed to show the mark acquired distinctiveness as required under 15 U.S.C. § 1051(f). [ECF No. 8-1].

In arriving at his decision, the Examining Attorney reviewed Adams' utility patent applications and the advertising on Adams' website, packaging and brochures, which touted the "light-diffusing rings" as a measure to prevent clear suction cups "from acting as magnifying glasses." [ECF No. 8-1, pp. 26-27; and see, ECF Nos. 8-2, p. 5; 8-5, p. 4; 8-6, p. 1; 8-22. 1, 3].

With regard to the nondistinctive properties of the proposed mark, the Examining Attorney determined that "nothing about the ridges on the back of the suction cup will lead consumers to associate the suction cup with a particular source. They are a nondescript and barely noticed element of the product. Moreover, as demonstrated by the attached evidence from thatpetplace.com and Amazon.com, suction cups from a variety of sources – not just applicant's – commonly have ridges on their backs/concentric rings. Thus, nothing about this feature will allow consumers to distinguish applicant's goods from those of others." [ECF No. 8-1, p. 28].

Adams' response to the Office Action Letter challenged the determination of functionality, contending that while the rings will diffuse light, they are not essential to achieving light diffusion and do not affect the cost or quality of the product. [ECF No. 8-13, p. 14]. Adams pointed to its '045 Patent, which provides several alternatives for creating a suction cup that diffuses light, such as roughening the outer surface of the cup, providing radial ribs or other non-circular projections or depressions on the outer surface of the suction cup, or adding a filler material in the polyvinyl chloride. Id. Adams contended that none of these alternatives are more costly than providing concentric rings and are all equally effective. Adams further argued that the USPTO's issuance of Design Patent No. 340,181 (Filed September 3, 1991; Issued October 10, 1993, for a term of 14 years), for a suction cup having concentric rings, and Trademark No. 3,339,265 (Filed February 1, 2005; Registered November 11, 2007), for a single ring suction cup, is inconsistent with its refusal to register the applied-for two ring trademark.

In support of its claim of acquired distinctiveness, Adams presented evidence of advertising and promotional material, advertising expenses, and consumer statements of recognition of the mark as a trademark for Adams' products, as well as documentation concerning the length and exclusivity of its use of the mark. In particular, Adams provided evidence that it has used the concentric rings mark exclusively since 1991 (coinciding with the issuance and active enforcement of its utility patent). Further, in the twenty years leading up to the trademark application, Adams has sold over 85 million suction cups with the concentric rings design for a total of gross sales of $10,300,000. Id. at 15. Adams also submitted the declarations of three individuals who have been involved in the purchase, sale and use of suction cups, each of whom state that Adams is the only manufacturer of suction cups that they associate with concentric rings. Adams therefore contended that it presented "ample evidence" that the applied-for mark has acquired distinctiveness entitling it to registration.

Upon review of the evidence presented by Adams, as well as publicly available product and market data, the Examining Attorney issued a Final Action Letter refusing registration of the applied-for mark. The Final Action Letter reiterated the Examining Attorney's review of applicable case law, the essential functionality of the mark to diffuse light as disclosed on Adams' utility patent and product advertising, and its lack of acquired distinctiveness as an Adams' mark. [ECF No. 8-33, p. 15].

Adams requested reconsideration, challenging the legal conclusions regarding functionality, contending that because alternative designs are available to diffuse light in a suction cup, the concentric two-ring design is not essential to the use or purpose of the patented suction cup. In support of this argument, Adams supplied the declaration of Donald French, a mold maker, who stated that a suction cup equally effective in diffusing light could be

manufactured at approximately the same cost as a suction cup with a two-ring design. [ECF No. 8-44, pp. 18-20].

Adams also found fault with the Examining Attorney's purported disregard of evidence regarding acquired distinctiveness, which included sales in the United States of over 85,000,000 suction cups with the two-ring design, as well as Adams' financial data regarding advertising and packaging expenses incurred in the promotion of its suction cups. [ECF No. 8-43, pp. 5-16; 8-44, pp. 1-7].

Reconsideration was denied because Adams' additional evidence was deemed cumulative and unpersuasive. The Examining Attorney found that Adams could not overcome the clear statements in its utility patent regarding the safety advantages and essential functionality of the concentric two-ring design, as well as the "applicant's advertising and literature regarding the product that promotes [the mark] as a patented, functional design." [ECF No. 8-44, pp. 8-9; 8-45, p. 1].

As to Adams' claim of acquired distinctiveness, the advertising submitted by Adams did not direct potential customers to "look for" the two-ring design to locate Adams' products, nor did it establish that customers recognize the dual rings as a source identifier. Id. The Examining Attorney provided an additional fifty pages of web sheets displaying products incorporating suction cups presumably manufactured by Adams. [ECF Nos. 8-45 – 8-51]. None drew attention to the two ring design as an identifier for Adams. Instead, as discerned in the initial refusal of the mark, Adams' advertising specifically promotes the functional light diffusing effect of the patented suction cups. See, e.g., ECF No. 8-31, pp. 1, 5 ("Light-Diffusing Rings").

Adams appealed the refusal to register its mark to the TTAB [ECF No. 8-52, p. 9]. The TTAB held a hearing on the appeal and affirmed the decision of the Examining Attorney. The

TTAB determined that consideration of the four factors set forth in In re Morton-Norwich Prods.,

Inc., 671 F.2d 1332 (C.C.P.A. 1982), compelled a finding that the suction cup design, considered

in its entirety, is functional and therefore not eligible for registration. [ECF No. 8-53, pp. 31, 44].

These factors include:

> 1. Whether a utility patent exists that discloses the utilitarian advantages of the design sought to be registered;

> 2. Whether applicant's advertising touts the utilitarian advantages of the design;

> 3. Whether alternative designs are available that serve the same utilitarian purpose; and

> 4. Whether the design results from a comparatively simple or inexpensive method of manufacture.

Id. at 1340-41.

With regard to the first factor, the TTAB found Adams '045 Patent particularly probative,

as it disclosed the utilitarian advantages of the design. The TTAB found that the '045 Patent

touted the two-ring concentric design as a solution to the danger presented from light rays

converging on a single focal point. Thus, the patent explained the significance of the design in

its essential functional role. [ECF No. 8-53, p. 37].

The second factor, advertising by the applicant, also weighed in favor of a finding of

functionality. The TTAB reviewed Adams' advertising and concluded that Adams has

substantially promoted the light diffusing function of the product and prominently highlighted

the "patented light diffusing rings." [ECF No. 8-53, p. 38].

The TTAB next considered the third factor, regarding the availability of alternative

designs, and weighed whether the product configuration is the best, or one of a limited number of

superior designs available for suction cups capable of diffusing light. The TTAB considered

Adams' evidence of alternative designs as disclosed in its patent and as described in the declarations of William Adams and Donald French, a mold maker. These alternatives include the incorporation of radial ridges or the use of filler material, which would effectively diffuse light. However, the TTAB found no evidence that any of the alternative designs are in use by any other manufacturer for the purpose of diffusing light. Accordingly, the TTAB found that Adams' utility patented design is superior and that issuance of a trademark covering the design into perpetuity would hinder competition. [ECF 8-53, pp. 41-42].

Finally, the TTAB considered the fourth factor, assessing whether the concentric ring design results from a comparatively simple or inexpensive method of manufacture. Adams again relied on the declarations of Williams Adams and Donald French, who explained that the cost of molds to manufacture suctions cups utilizing various methods of light diffusion, including roughened surfaces, projections or radial ribs, is essentially the same as the cost of manufacturing suctions cups with two concentric rings. Accordingly, the TTAB determined that this factor weighed in Adams' favor. [ECF No. 8-53, p. 43].

The TTAB then balanced each of the four factors and concluded that the applied for product configuration mark, when considered in its entirety, is functional. "The presence of a patent directed specifically to the elements of [Adams'] subject design, Adams' advertising touting the utilitarian features and the limited number of alternatives on the market are strong indicators of a superior design that competitors should be permitted to copy to compete effectively." [ECF No. 8-53, p. 44]. In reaching its conclusion, the TTAB also found that the previously issued design patent for a single ring suction cup was not sufficiently determinative of the issue of functionality. Id. The fact that any design feature will be somewhat ornamental did not outweigh, on balance, the overall functional purpose and utilitarian advantages served by the

concentric two-ring design to diffuse light, as disclosed in the utility patent. [ECF No. 8-53. p. 36, p. 44].

Alternatively, The TTAB also found that the proposed mark had not acquired distinctiveness, and agreed with the Examining Attorney that Adams "has not shown that the purchasing public would recognize the concentric rings design as being a trademark. The design is not inherently distinctive and has not been shown, by this record, to have acquired distinctiveness." [ECF No. 8-53, p. 50].

In conjunction with its pending Motion for Summary Judgment, Adams has submitted additional evidence to the Court in support of its contention that the two ring design has acquired distinctiveness and, with regard to functionality, that several cost-equivalent alternatives for the diffusion of light are available, such that registration of its mark was improperly denied. In particular, Adams presents the declaration of Sanford Asher, Ph.D., chemistry professor at the University of Pittsburgh, who states that any number of vinyl patterns on the surface of a suction cup would diffuse light, as would the addition of opaque filler. [ECF No. 23-1, pp. 2-3]. Attached to Dr. Asher's extensive curriculum vitae are several drawings demonstrating alternative designs for suction cups that would also diffuse light, most involving shapes cut into the radius of each cup. This evidence, introduced to establish the availability to competitors of functionally equivalent designs, is cumulative to the alternatives propounded in the declarations of Donald French and William Adams, which were considered by the TTAB, as were the alternative designs contained in the '045 Patent.

Adams also presents the declaration of its product development manager, Robert Schreiber, who concurs with evidence presented by William Adams and Donald French, that alternative designs do not cost more to manufacture than the two-ring design and are not

substantially more difficult to make.  [ECF No. 23-1, p. 80].  Included with Schreiber's declaration are cost estimates of molds and materials for alternative designs, estimates of the volume of materials required for each design, and the length of time for each alternative design to set.  This evidence, while more precise as to exact manufacturing and labor costs, is cumulative to the evidence presented through the declarations of William Adams and Donald French and considered by the TTAB.

With regard to Adams' claim that the two ring design has acquired distinctiveness, Adams presents several additional declarations from distributors and purchasers of suction cups who state that suction cups bearing the two-ring configuration are understood in the industry to be Adams' products. [ECF No. 23-1, pp. 93 – 108].   Given Adams' aggressive protection of its utility patent through actual and threatened patent infringement litigation over the past twenty years, this evidence is not surprising.  The record includes evidence of numerous lawsuits filed against various manufacturers for alleged infringement of Adams' '045 utility patent. [See, ECF No. 23-1, p. 152 – 23-4 p. 25]. The record reveals that Adams' claims for alleged infringement include the unauthorized use or distribution of suction cups with two concentric rings.

Adams has supplied the Court with dozens of product brochures, pamphlets, order sheets and photos of product packaging to support its contention that it has invested in the advertising and marketing of the two ring design. The product information overwhelmingly promotes the functionality of the "patented light diffusing rings" [ECF No. 23-4, p. 33], and establishes that Adams advertised that the "[s]uction cup design diffuse[s] light to prevent surface damage while holding in hot and cold extremes" [ECF No. 23-5, p. 21]; and that the "patented light diffusing rings prevent sunlight magnification from damaging curtains or furniture" [ECF No. 23-5, p. 46].

See, also, ECF No. 23-1, pp. 113-114. This evidence has been considered by the Court in conjunction with its review of the evidence presented to the TTAB.

## II.    JURISDICTION, SCOPE AND STANDARD OF REVIEW

### A. Jurisdiction

Pursuant to 15 U.S.C. § 1071, an applicant for registration of a mark who "is dissatisfied with the decision of the Director or Trademark Trial and Appeal Board," may initiate a civil action in the United States District Court in lieu of an appeal of the TTAB's determination to the Federal Circuit.  15 U.S.C. § 1071(b)(1).   In a civil action, a district court "may adjudge that an applicant is entitled to a registration upon the application involved, that a registration involved should be canceled, or such other matter as the issues in the proceeding require, as the facts in the case may appear."  Id.  Venue in this district is proper pursuant to 28 U.S.C. § 1391, and the parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).

### B. Scope and Standard of Review of the TTAB Decision.

"In a § 1071(b) action, the district court reviews the record *de novo* and acts as the finder of fact."  Swatch AG v. Beehive Wholesale, LLC, 739 F.3d 150, 155 (4th Cir. 2014)  "The district court must admit the [USPTO] record if a party so moves, and if admitted, the record 'shall have the same effect as if originally taken and produced in the suit.'" Id. Whether or not the record is admitted, the parties have an unrestricted right to submit further evidence as long as it is admissible under the Federal Rules of Evidence and Civil Procedure. Swatch AG, 739 F.3d at 155; *citing* Kappos v. Hyatt, ___ U.S. ___, 132 S. Ct. 1690, 1700 (2012) (interpreting § 1071(b)'s patent parallel, 35 U.S.C. § 145).

"[W]here new evidence is presented to the district court on a disputed fact question, a *de novo* finding will be necessary to take such evidence into account together with the evidence before the board." Kappos v. Hyatt, 132 S. Ct. at 1696. Thus, the district court does not act as a reviewing court, but must determine, "how the new evidence comports with the existing administrative record." Kappos at 1700. Nevertheless, "the district court may, in its discretion, consider the proceedings before and findings of the Patent Office in deciding what weight to afford an applicant's newly-admitted evidence." Id. at 1700 (quoting Hyatt v. Kappos, 625 F.3d 1320, 1335 (Fed. Cir. 2010)(en banc)). Here, because Adams has presented "new" evidence, this Court must consider whether the record as a whole establishes that Adams is entitled to registration of the two ring design as a protected mark. Swath AG, 739 F.3d at 156 . In so doing, and as indicated, this Court has thoroughly considered and given appropriate weight to the newly-admitted evidence where it is not merely cumulative in nature.

The parties have filed cross-motions for summary judgment, briefs in support and opposition thereto, along with extensive material in support of their respective motions. Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in original). Functionality of a proposed mark and acquired distinctiveness are questions of fact that, in appropriate cases, can be determined on summary judgment. In re: Becton, Dickenson and Co., 675 F.3d 1368, 1373

(Fed. Cir. 2012); <u>Georgia-Pacific Consumer Products LP v. Kimberly-Clark Corp.</u>, 647 F.3d. 723, 727 (7th Cir. 2011).

In considering the propriety of the Examining Attorney's refusal to register Adams' proposed mark, the Examining Attorney must make a prima facie case of functionality, which if established, must be rebutted by "competent evidence." <u>In re: Becton, Dickenson and Co.</u>, 675 F.3d at 1373. In this case, given the evidence presented regarding the '045 Patent and Adams' advertising regarding the "light diffusing rings," the Examining Attorney established a prima facie case of functionality within the meaning of the Lanham Act, 15 U.S.C. § 1502(e). To prevail, Adams must rebut this prima facie case with competent evidence and prove, by a preponderance of the evidence, that the applied-for mark is not functional and has acquired distinctiveness entitling it to registration. <u>In re: Becton, Dickenson and Co.</u>, 675 F.3d at 1374; <u>In re Smith, Inc.</u>, 734 F.2d 1482, 1484 (Fed. Cir. 1984).

In light of the parties' cross-motions for summary judgment, the Court must determine whether the parties have shown that there exists a triable issue of fact with respect to functionality. <u>Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.</u>, 730 F.3d 494, 505 (6th Cir. 2013). If it is determined that there is no genuine issue of material fact as whether Adams' two concentric ring suction cup design is functional, then under <u>TrafFix</u> and <u>Inwood</u>, it is not eligible for registration as a trademark. For that reason alone, judgment must be entered in favor of the USPTO as a matter of law. <u>TrafFix</u>, 532 U.S. at 33.

## III. DISCUSSION

As previously alluded to, there is an undeniable tension between patent law and trademark protection of product designs. "In patent law, the purpose is to encourage innovation while inviting competition; the recipient of a patent is granted a monopoly for a limited time,

after which the innovation passes to the public for copying and improvement." Berlin Packaging, LLC v. Stull Technologies, Inc., 381 F. Supp. 2d 792, 796 (N.D. Ill. 2005), citing Thomas & Betts v. Panduit Corp., 138 F.3d 277, 283 (7th Cir. 1998) ("T & B II"). For an invention to be patented, an item must fulfill three conditions: it must be novel, it must possess utility, and it must be non-obvious. T & B II, 138 F.3d at 283; *see generally* Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 480 (1974). Inventions that meet these conditions are granted patent protection, and the inventor is granted a twenty year monopoly on the manufacture or exploitation of the device. Id. After the expiration of the patent, the public is free to copy and profit from the invention.

In contrast, the purpose of trademark law is not to encourage invention, but to maintain quality by protecting the reputation of the producer for an unlimited time. Qualitex, 514 U.S. at 165. Trademarks are protected "in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." T & B II, 138 F.3d at 284. In order for a mark to be registered as a trademark, it must be capable of distinguishing the applicant's goods from those of others. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). Trademarks can include "any word, name, symbol, or device, or any combination thereof [used or intended to be used] to identify and distinguish [a producer's] goods ... from those manufactured or sold by others and to indicate the source of the goods...." 15 U.S.C. § 1127 (2005). However, as clarified in Section 1052(e)(5) of the Lanham Act, 15 U.S.C. § 1052 (e)(5), and by the United States Supreme Court in TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 29 (2001), protection into perpetuity may not be claimed for product marks that are functional, so as to promote the salutary effects of competition on technological advances. Id., citing Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 160 (1989).

Adams contends that because alternative designs that are equally effective are available at approximately the same cost as manufacturing the two-ring design, registration of its mark would not adversely affect competition. In the absence of any anti-competitive result from registration of the design, Adams argues that the Examining Attorney and the TTAB erred in finding its design functional. However, as argued by the USPTO, if Adams' concentric two-ring design is functional, then refusal of the application was proper as a matter of law. Georgia-Pacific Consumer Products LP, 647 F.3d at 727.

**A.    Functionality of proposed mark**

The long-standing test to determine if a product design is functional, and cannot serve as a trademark, is whether the design is essential to the use or purpose of the article or affects the cost or quality of the article. Qualitex Co. v. Jacobson Prods. Co., Inc., 514 U.S. at 165, quoting Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 850 (1982).

To determine whether a proposed mark is functional, the following four factors are considered:

(1) the existence of a utility patent that discloses the utilitarian advantages of the design sought to be registered;

(2) advertising by the applicant that touts the utilitarian advantages of the design;

(3) facts pertaining to the availability of alternative designs; and

(4) facts pertaining to whether the design results from a comparatively simple or inexpensive method of manufacture.

In re Becton, Dickinson and Co., 675 F.3d at 1374, citing In re Morton-Norwich Prods., Inc., 671 F.2d at 1340-41. It is not required that all four factors be proven in every case, nor do all four factors have to weigh in favor of functionality to support a refusal; nevertheless, in reaching a

decision, all four factors must be reviewed. <u>Valu Eng'g, Inc. v. Rexnord Corp</u>., 278 F.3d 1268, 1276 (Fed. Cir. 2002).

Adams challenges the ultimate factual determination that the applied-for mark is functional by asserting the purportedly dispositive application of the third and fourth factors. However, it is the first two factors which lead inescapably to the conclusion that Adams' two-ring design is essential to the use or purpose of the suction cup and, further, that it affects the quality of the article, and is not capable of registration as a trademark.

### 1. Existence of Utility Patent

Regarding the first factor, a utility patent claiming the applied-for mark is overwhelming evidence that the mark is functional. <u>TrafFix Devices, Inc.</u> 532 U.S. at 29-30; <u>In re Becton, Dickinson & Co</u>., 675 F.3d at 1375.   In <u>TrafFix,</u> the United States Supreme Court considered the propriety of the entry of summary judgment in a trade dress dispute over wind-resistant mobile traffic stands.  MDI owned two utility patents for the mechanism which kept the signs from being blown over in the wind; the mechanism consisted of two springs (the dual-spring design). <u>Id.</u> at 25. When the patents expired, TrafFix Devices, Inc. ("TrafFix"), a competitor, started to sell virtually identical sign stands with the same spring mechanism. <u>Id.</u> at 26. MDI sued TrafFix for trade dress infringement pursuant to the Lanham Act. <u>Id.</u>; 15 U.S.C. § 1051 et seq.  The United States District Court for the Eastern District of Michigan ruled against MDI, holding that the design was functional, and so could not properly be protected as trade dress. <u>Marketing Displays, Inc. v. TrafFix Devices, Inc.</u>, 971 F. Supp. 262, 276 (E.D. Mich. 1997).

The United States Court of Appeals for the Sixth Circuit reversed, concluding that because alternative designs for a spring mechanism were possible, the MDI design was not a

"competitive necessity" and therefore was not functional. <u>Marketing Displays, Inc. v. TrafFix Devices, Inc.</u>, 200 F.3d 929, 940 (6th Cir. 1999). The United States Supreme Court reversed.

The Supreme Court considered the effect of an expired utility patent on MDI's claim and concluded that a prior utility patent has "vital significance in resolving the trade dress claim" because it "is strong evidence that the features therein claimed are functional." <u>TrafFix</u>, 532 U.S. at 30. A previous utility patent therefore adds "great weight" to the already burdensome statutory presumption that the features are deemed functional. In order to overcome this "heavy burden," a person seeking trade dress after an expired patent must show that the feature is not functional by showing that it is "merely an ornamental, incidental, or arbitrary aspect of the device." <u>Id.</u>

To determine if MDI's purported trade dress feature was merely incidental, the Supreme Court examined MDI's expired patents to see if the patents claimed the same features for which trade dress protection was sought. The Supreme Court compared the "essential feature" of MDI's claimed trade dress against the "central advance" claimed in the expired utility patents. <u>Id.</u> The Supreme Court concluded that the essential feature of the trade dress and the central advance of the expired utility patents were the same: the dual-spring design. Therefore, because the patent and trade dress sought to protect the same essential element, the trade dress claim was barred. Summary Judgment was appropriately entered because MDI was unable to overcome the "strong evidentiary inference of functionality based on the disclosure of the dual-spring design in the claims of the expired patents." <u>Id.</u>

The Supreme Court reached its determination of functionality despite the fact that the dual spring design in the patent had a different appearance than the dual spring design at issue in the trade dress claim. <u>Id.</u> In the patent, the dual springs were farther apart. However, the Supreme Court cited the doctrine of equivalents, noting that there can be patent infringement

"even when the accused product does not fall within the literal terms of the claims." Id. at 31,

citing Sarkisian v. Winn–Proof Corp., 697 F.2d 1313, 1321–22 (9th Cir. 1983) (the doctrine of

equivalents allows a finding of patent infringement even when the accused product does not fall

within the literal terms of the claims).

      The Supreme Court next looked to the language of the MDI patents to explain why the

existence of an expired utility patent constitutes strong evidence of functionality. Id. The

Supreme Court noted that the expired patents described the purposes of the spring design: the

design kept signs upright even in heavy wind conditions; the dual-spring design prevented

twisting of the sign in the wind; and the two spring construction was more cost-effective than

three. Id. at 32. These statements demonstrated the functionality of the design: "the dual-spring

design provides a unique and useful mechanism to resist the force of the wind." Id. at 33. The

Supreme Court therefore concluded that MDI had not overcome the heavy burden of showing

that the trade dress claimed was non-functional and reversed the Sixth Circuit's decision.

      Here, Adams' concentric ring design is the essential feature advocated as the "central

advance" in the '045 Patent. The patent claims an improved suction cup "comprising a plurality

of surface deformations … such that light rays passing through said suction cup will not

converge at a single focal point." The patent describes the embodiment of this design wherein

"circular ridge[s] 318 are provided on frustoconical section 316 of cup portion 314." Patent No.

5,039,045 at column 3, lines 33-34. The patent includes the following drawing to demonstrate

the concentric ring design (Figure 7) as the advance claimed to effectively diffuse light (Figure

8):



The two-ring design therefore is not merely incidental or ornamental; it is the fundamental purpose of the utility patent, advanced to prevent the danger of converging light rays through clear suction cups attached to windows. [3]

     Adams seeks to limit the "vital significance" of the '045 Patent by claiming that the concentric two-ring design is not essential to a light diffusing suction cup. Given the availability of alternative designs to diffuse light, Adams contends no potential suction cup manufacturers would be at a competitive disadvantage if the mark were issued and, consequently, the design is not functional.

---

[3] For this reason, Adams' contention that the prior issuance of a design patent is presumptive evidence that the mark is not functional must be rejected. "[W]hile evidence of a design patent may be some evidence of non-functionality under <u>Morton-Norwich</u>, 'the fact that a device is or was the subject of a design patent does not, without more, bestow upon said device the aura of distinctiveness or recognition as a trademark.'" <u>R.M. Smith Inc.</u>, 734 F.2d 1842, 1485 (Fed. Cir. 1984); *and see*, <u>Application of Honeywell, Inc.</u>, 532 F.2d 180, 183 (C.C.P.A. 1976)("happenstance" of prior issuance of a design patent for thermostat outer cover ring and transparent center disk does not preclude finding of functionality).

Adams also argues that the prior issuance of a trademark with respect to a single ring suction cup, U.S. Trademark Reg. No. 3,339,265, is dispositive of its alleged entitlement to registration of the two-ring design. However, the issuance of a prior mark, obtained through an ex parte proceeding, does not bind a later determination of functionality. The Lanham Act, 15 U.S.C. § 1064(3) provides that any mark may be cancelled if it is, or becomes, functional. Alleged "incontestability" based upon five years of exclusive use does not alter this result. An "incontestable mark" may be defeated by a showing of functionality. <u>Eco Mfg. LLC v. Honeywell Intern. Inc.</u>, 357 F.3d 649, 651 (7th Cir. 2003); <u>Specialized Seating, Inc. v. Greenwich Indus., LP</u>, 616 F.3d 722, 726-27 (7th Cir. 2010)(a previously issued trademark is appropriately held invalid when the design is functional, as readily determined by reference to a utility patent covering the asserted trademark).

In TrafFix, the United States Supreme Court expressly disavowed an approach which speculated on the incorporation of other design possibilities to determine functionality and, instead, looked to the actual design at issue. The Supreme Court determined that the dual-spring design was not an "arbitrary flourish in the configuration of MDI's product," but provided a "unique and useful mechanism to resist the force of the wind." The design therefore had a particular appearance that was functional because it was "essential to the use or purpose of the article." TrafFix, 532 U.S. at 35, citing, Inwood, 456 U.S. at 850. In contrast, where an ornamental aspect of the design is not the stated purpose of the utility patent, functionality may be challenged.

> In a case where a manufacturer seeks to protect arbitrary, incidental, or ornamental aspects of features of a product found in the patent claims, such as arbitrary curves in the legs or an ornamental pattern painted on the springs, a different result might obtain. There the manufacturer could perhaps prove that those aspects do not serve a purpose within the terms of the utility patent. The inquiry into whether such features, asserted to be trade dress, are functional by reason of their inclusion in the claims of an expired utility patent could be aided by going beyond the claims and examining the patent and its prosecution history to see if the feature in question is shown as a useful part of the invention. No such claim is made here, however. MDI in essence seeks protection for the dual-spring design alone. The asserted trade dress consists simply of the dual-spring design, four legs, a base, an upright, and a sign. MDI has pointed to nothing arbitrary about the components of its device or the way they are assembled. The Lanham Act does not exist to reward manufacturers for their innovation in creating a particular device; that is the purpose of the patent law and its period of exclusivity.

TrafFix, at 34.

In the case at issue, this Court concludes that the essential feature of Adams' claimed trademark and the central advance of the expired patent are one and the same. Adams cannot claim that the concentric rings on the suction cup are an arbitrary flourish. The design of the Adams' suction cup is necessary to its operation, to prevent light passing through a suction cup from converging on a focal point. As advertised, it is the reason the patented device works, and

therefore the two ring design is not random or artistic, but is designed to address a specific safety issue. See, also, Georgia-Pacific Consumer Products LP, 647 F.3d at 727 (the "central advance" claimed in the utility patent (a quilt-like diamond lattice that improves perceived softness and reduces nesting and ridging of toilet paper) is the same "essential feature" claimed in the trademark, and so the utility patent was "strong evidence" that the mark was functional and not eligible for trademark protection under the Lanham Act); Aasics v. Target Corp., 282 F. Supp.2d 1020, 1026 – 1030 (D. Minn. 2003)(utility patent issued for striping on running shoes provided longitudinal and lateral skeleton-shaped reinforcement was "strong evidence" of functionality and "significant and persuasive independent evidentiary support of its functionality").

**2. Advertising and Marketing Materials**

In the multitude of Adams' advertising and promotional materials, Adams has consistently and repeatedly touted the utilitarian advantages of its proposed mark, specifically the use of the rings to diffuse light. It is undisputed that many of Adams' product packaging and brochures contain a graphic depicting an "ordinary suction cup" and an "Adams suction cup" to demonstrate the operation of the "light diffusing rings" [ECF No. 23-4, p. 43]; and promote the "patented light diffusing rings" [ECF No. 23-4, p. 49]; and the ability of the design "to prevent surface damage" by diffusing light [ECF No. 23-5, p. 21].

Adams' marketing of its patented suction cup is similar in nature to the advertising presented in Georgia-Pacific Consumer Products LP, 647 F.3d at 730, where Georgia-Pacific promoted its Quilted Northern toilet tissue as "(1) 'Quilted to Absorb'; (2) 'Quilted to create thousands of places for moisture to go'; (3) 'Our two softest layers of premium tissue are gently quilted together to give you and your family exceptional softness and comfort,' and (4) 'Quilted Northern Ultra with a unique quilted design for more quilting and comfort than ever before."

Georgia-Pacific claimed that these statements were mere puffery and not factual statements about the product. The United States Court of Appeals for the Seventh Circuit found, however, that "the district judge was spot-on in noting that the language 'links the quilted feature to numerous utilitarian benefits, such as softness, comfort, and absorption,' further affirming that the Quilted Diamond Design is functional." Id. As with Georgia-Pacific, Adams' consistent promotion of the light diffusing qualities of its suction cups clearly and unequivocally links the functional benefits of its design and renders a finding of the functional purpose of the design inescapable.

### 3. Availability of Alternative Designs

Adams argues that the two-ring design is not functional because of the availability of numerous alternative suction cup designs capable of diffusing light. Adams has presented several declarations of various engineers and a number of designs to establish that the two-ring design is not the only possible configuration for the manufacture of a light diffusing suction cup. With these alternatives within reach, Adams contends that the applied-for mark is not essential to the function of the suction cup and registration of the design would not hinder competition. Adams has not presented evidence that any of the alternative designs for diffusing light are in use.

Adams' argument ignores TrafFix, where the United States Supreme Court ruled that "there is no need, furthermore, to engage, as did the Court of Appeals, in speculation about other design possibilities, such as using three or four springs which might serve the same purpose. Here, the functionality of the spring design means that competitors need not explore whether other spring juxtapositions might be used. The dual-spring design is not an arbitrary flourish in

the configuration of MDI's product; it is the reason the device works. Other designs need not be attempted." TrafFix, 532 U.S. at 33-34.

Similarly, in Groeneveld Transport Efficiency, 730 F.3d at 506-7, the United States Court of Appeals for the Sixth Circuit cited the holding in TrafFix to deny recovery to the plaintiff manufacturer for alleged trade dress infringement of its grease pump design. The manufacturer contended that the design was not functional, and therefore properly the subject of trademark, because there were a myriad of other design possibilities available for effective competition in the industry. The Court of Appeals rejected plaintiff's argument because competitive necessity is only relevant in cases of esthetic functionality, "not in cases of utilitarian functionality where a design is essential to the use or purpose of a device." Id. The Court of Appeals concluded that, as in TrafFix, a design is essential to the use of a product where the overall shape is substantially influenced by functional imperatives or preferences.

The evidence plainly establishes that Adams' two-ring design was chosen for a specific functional purpose; ie., to diffuse light. The fact that other suction cup designs will also diffuse light does not take away from the basic functionality of the Adams two-ring design. See, also, Keene Corp. v. Paraflex Indus., Inc., 653 F.2d 822, 827 (3d Cir. 1981) ("merely because there are other shapes and designs 'which defendant could use and still produce a workable' product" does not render the design non-functional). As discerned in Georgia-Pacific, "the design in question does not have to be the *only* possible design to be functional; rather, it is functional if it 'represents *one of many solutions to a problem.*'" Georgia-Pacific, 647 F.3d at 731(emphasis in original), quoting Specialized Seating, Inc. v. Greenwich Industries, L.P., 616 F.3d at 727.

Accordingly, the evidence presented is insufficient for a reasonable jury to find that that design is nonfunctional, given that the shape and design of the two-ring suction cup is influenced

by its light diffusing quality as expressed in the '045 Patent and in Adams' product promotion materials. The existence of alternative designs does not, as argued by Adams, render the design nonfunctional or incidental. Id.

### 4. Whether the design results from a comparatively simple or inexpensive method of manufacture?

As determined by the TTAB, Adams has presented sufficient evidence that the two ring design does not cost significantly more, nor is it significantly easier to manufacture than proposed alternative designs. In particular, the declarations of William Adams, Donald French and Robert Schreiber, Adams' product development manager, establish without dispute that the cost of molds for the various proffered light diffusing designs are essentially equal, as is the volume of materials and the labor costs involved in manufacturing each alternative. Accordingly, this factor weighs in favor of Adams.

Balancing each of the four functionality factors, and the extensive evidence presented, this Court finds that no reasonable jury could find that Adams' two-ring design is not functional. TrafFix imposes a heavy burden on Adams to establish that its product promotion and '045 Patent do not render the two-ring design functional, a burden which Adams has not met in this case. Because the essential feature of the applied-for mark is the same as the central advance of the patent, there is no material issue of fact which needs to be decided by a finder of fact.

### B. Acquired Distinctiveness

In light of this Court's finding that the Adams' two concentric ring suction cup design is functional under TrafFix and Inwood, it is not eligible for registration as a trademark for that reason alone. Therefore, this Court need not address the alternative reason for refusal; that the design lacks acquired distinctiveness. TrafFix, 532 U.S. at 33 ("[f]unctionality having been

established, whether MDI's dual-spring design has acquired secondary meaning need not be considered").

## IV.     CONCLUSION

The evidence presented by the parties establishes that there are no material issues of fact regarding the essential functionality of the applied for mark.  Adams was accorded the exclusive use of the light diffusing two ring design throughout the life of the '045 Patent, which it actively protected through actual and threatened litigation.  The two-ring design is not entitled to protection into perpetuity through trademark registration because, at its most basic form, it serves to prevent damage from the convergence of light rays on a single focal point.  Therefore, the light diffusing two-ring suction cup is functional and not eligible for registration as a trademark pursuant to the express provisions of the Lanham Act. Accordingly, the Motion for Summary Judgment of the USPTO is granted and Adams' Motion for Summary Judgment is denied.  An appropriate Order follows.

## ORDER

For the reasons set forth in the accompanying Opinion, and upon consideration and review of the parties cross-motions for summary judgment, briefs in support and opposition thereto, as well as the extensive exhibits submitted by Adams to both the TTAB and to this Court, the Motion for Summary Judgment filed by Adams [ECF No. 24] is denied and the Motion for Summary Judgment filed by the USTPO [ECF No. 27] is granted.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of

Appellate Procedure, if the Plaintiff wishes to appeal from this Order, it must do so within thirty

(30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P.

BY THE COURT:


/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE


Dated: March 12, 2014


cc:     All counsel of record by Notice of Electronic Filing